1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**

8 **EASTERN DISTRICT OF WASHINGTON**

9 Case No. 12-CV-00056-VEB

10

ROBERT JOHN COTTAM,

11
                    Plaintiff,                   ORDER GRANTING PLAINTIFF'S
12                                               MOTION FOR SUMMARY
vs.                                              JUDGMENT
13
CAROLYN W. COLVIN, Acting
14 Commissioner of Social Security,

15                  Defendant.

16

    **BEFORE THE COURT** are cross-motions for summary judgment. ECF No.

17
17, 20. Attorney David L. Lybbert represents Plaintiff Robert John Cottam.
18
Assistant United States Attorney Pamela J. DeRusha represents the Commissioner of
19
Social Security. The parties consented to proceed before a magistrate judge. ECF
20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

No. 4. After reviewing the administrative record and the briefs filed by the parties, the court **grants** Plaintiff's motion for summary judgment, ECF No. 17, **denies** the Commissioner's motion for summary judgment, ECF No. 20, and directs that this case be remanded for calculation of benefits.

## JURISDICTION

Plaintiff applied for supplemental security income disability benefits ("SSI") and disability insurance benefits ("DIB") on December 14, 2007, alleging an onset date of February 23, 2005. (Tr. 158, 159-61).[1] The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

ALJ Michael S. Hertzig held a hearing on October 13, 2009. (Tr. 51). Plaintiff, represented by counsel, appeared and testified. (Tr. 67-96).    Dan McKinney, a vocational expert, also appeared and testified. (Tr. 97-103).  On April 15, 2010, the ALJ issued a decision denying Plaintiff's applications for benefits. (Tr. 19-50). The Appeals Council denied Plaintiff's request for review on December 30, 2011 (Tr. 1-6), making the ALJ's decision the Commissioner's final decision.

Plaintiff timely commenced this action on January 23, 2012, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g). ECF No. 6. The Commissioner interposed an Answer on April 11, 2012. ECF No. 13.  Plaintiff filed a motion for summary judgment, with supporting memorandum of law, on

---

[1] Citations to "Tr." refer to the Administrative Record. ECF No. 14.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

August 8, 2012. ECF No. 17, 18.  The Commissioner filed a summary judgment motion, with supporting memorandum of law, on September 19, 2012. ECF No. 20, 21.  Plaintiff filed a reply memorandum of law on September 27, 2012. ECF No. 22. This case was assigned to the undersigned on December 23, 2013, by Order of the Honorable Rosanna Malouf Peterson, Chief United States District Judge. ECF No. 25.

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the parties' briefs. They are only briefly summarized here and throughout this Order as necessary to explain this Court's decision.

Plaintiff was 48 years old on the alleged onset date and 53 at the time of the ALJ's decision (Tr. 44). He has a high school education and worked as a sheet rocker/drywall applicator for many years. (Tr. 43-44). He alleges disability due to the combined effect of physical conditions affecting his lower back and shoulders, as well as depression, paranoia, anxiety, and grief. ECF No. 18, at 5.

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at step one of the sequential evaluation that Plaintiff had not engaged in substantial gainful activity since February 23, 2005, and met the insured status requirements of the Social Security Act through December 31, 2006. (Tr. 25-26).

At step two, the ALJ determined that Plaintiff's minor degenerative changes of the lumbar spine, major depressive disorder (NOS), generalized anxiety disorder (NOS), and history of drug and alcohol abuse (in unknown remission), were impairments considered "severe" under the Act. (Tr. 26).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

However, at step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (Tr. 26-27).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform "light work," as defined in 20 CFR § 404.1567 (b) and 416.967 (b), except that he was limited to occasional climbing, stooping, kneeling, crouching or crawling.  The ALJ further found that Plaintiff retained the ability to understand, remember, and carry out simple and detailed tasks, but should avoid concentrated exposure to the public and co-workers. (Tr. 28-43).

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a drywaller. (Tr. 43). At step five, considering Plaintiff's age, education, work experience, and RFC, as well as the testimony of the vocational expert, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr 44-45).   Thus, the ALJ concluded that Plaintiff had not been under a disability, as defined under the Act, from February 23, 2005 (the alleged onset date), through April 15, 2010 (the date of his decision) (Tr. 45).   As noted above, the ALJ's decision became the Commissioner's final decision on December 30, 2011, when the Appeals Council denied Plaintiff's request for review (Tr. 1-6).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## DISCUSSION

Plaintiff argues that the Commissioner's decision should be reversed.   He offers three (3) principal arguments in support of this position.   First, he contends that the ALJ did not properly assess the opinions of various medical providers. Second, Plaintiff challenges the ALJ's credibility determination.   Third, he argues that the hypothetical questions presented to the vocational expert were flawed.   This Court will address each argument in turn.

A.    *Medical Provider Opinions*

Plaintiff contends that the ALJ did not properly assess several opinions provided by various medical providers.

1.        *Dr. Camden*

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In September of 2007, Dr. Alissa Camden, Plaintiff's treating physician, completed a physical evaluation form, in which she noted a diagnosis of progressive back pain and spinal stenosis. (Tr. 252-53). Dr. Camden opined that Plaintiff was unable to lift more than 20 pounds and had decreased range of motion with forward flexion. (Tr. 252). She assessed marked limitations as to Plaintiff's ability to stand, lift, and carry. Dr. Camden also noted restrictions with regard to bending, crouching, pulling, and pushing. (Tr, 253). She determined that Plaintiff could perform "light work" and retained the ability to walk or stand for 6 hours in an 8-hour day or sit "most of the time with occasional pushing and pulling of arm and/or leg controls." (Tr. 253). Dr. Camden opined that Plaintiff could not perform his past relevant work as a drywall construction laborer. (Tr. 254).

In August of 2008, Dr. Camden completed another physical evaluation form, in which she made the same findings (Tr. 431-33).

The ALJ afforded "great weight" to Dr. Camden's opinions. The Court concludes that the ALJ's RFC assessment of light work, with only occasional climbing, stooping, kneeling, crouching, and crawling, is consistent with Dr. Camden's opinions. (Tr. 40). Plaintiff contends that Dr. Camden's opinions actually provide for a greater degree of limitation. In this regard, Plaintiff notes that Dr. Camden assessed "marked" limitations as to Plaintiff's ability to stand, lift, and carry. (Tr, 253). Plaintiff argues that these marked limitations are inconsistent with

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

an ability to perform light work, as defined under the Act.  However, the forms completed by Dr. Camden defined "light work" as the "ability to lift 20 pounds maximum and frequently lift and/or carry up to 10 pounds," which is consistent with the ALJ's RFC findings. (Tr. 253).  Thus, any arguable ambiguity concerning what Dr. Camden meant when she assessed "marked" limitations is resolved by the fact that she opined that Plaintiff could perform light work as defined by the forms she completed.  Likewise, Plaintiff's argument that Dr. Camden's "marked" limitation as to his ability to stand is inconsistent with the ALJ's conclusion is undermined by the fact that Dr. Camden specifically indicated that Plaintiff could stand for 6 hours in an 8-hour work day.  (Tr. at 253).

The ALJ's RFC assessment was further supported by the opinion of Dr. Norman Staley, a non-examining review physician, who assessed limitations consistent with Dr. Camden's findings. (Tr. at 374-75, 413). *See Henderson v. Astrue*, 634 F. Supp. 2d 1182, 1190 (E.D.W.A. 2009)("The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it.")(citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

This Court thus finds no error with regard to the ALJ's assessment of Dr. Camden's opinion or his determination of Plaintiff's physical RFC.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

2.        *Dr. Genthe*

Dr. Thomas Genthe, a licensed psychologist, performed a consultative psychological examination in February of 2008.  Dr. Genthe diagnosed major depressive disorder, with history of psychotic features (partly responsive to medication); anxiety disorder (partly responsive to medication); alcohol dependence (unknown remission), and marijuana dependence (unknown remission). (Tr at 347). He suspected Plaintiff of malingering. (Tr at 347).

Dr. Genthe reported that Plaintiff presented with "overall normal mental status" and opined that Plaintiff's responses did not suggest any significant impairment with respect to his ability to understand, remember, and carry out simple instructions. (Tr. at 348).  He also found that Plaintiff's ability to understand, remember, and carry out more complex instructions was "intact." (Tr. at 348).  Per Dr. Genthe, Plaintiff demonstrated the ability to sustain focused attention and concentration sufficient to permit him to complete common work-related tasks in a timely and appropriate manner. (Tr, at 348).

Dr. Genthe opined that Plaintiff appeared to be able to relate to others and interact appropriately in public contacts "on a basic level." (Tr. at 348).  He further found that Plaintiff's ability to appropriately respond to and tolerate everyday expectations and pressures did not appear to be "severely disturbed." (Tr. at 348).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Dr. Genthe assigned Plaintiff Global Assessment of Functioning ("GAF") scores[2] of 70 for cognitive function, 60-65 for emotional functioning, and 65-70 for interpersonal function, which are indicative of mild or moderate functional difficulties. *See Sellery v. Astrue*, No. CV-10-322, 2011 U.S. Dist. LEXIS 119713, at 13 (E.D.W.A. Oct. 17, 2011).

The ALJ afforded Dr. Genthe's assessment "great weight" and concluded that Plaintiff retained the RFC to carry out simple and detailed tasks, provided he could avoid concentrated exposure to the public and co-workers. (Tr. at 42).  This Court finds that the ALJ gave excessive weight to Dr. Genthe's assessment, did not adequately develop the record, and did not give appropriate weight to the opinions of other sources.  As such, the ALJ's determination concerning Plaintiff's ability to perform the mental demands of basic work activity is not supported by substantial evidence.

In April of 2007, Caitlin Newman, a mental health counselor, assessed major depressive disorder (severe) and complicated bereavement. (Tr. at 258).  She described Plaintiff as having marked impairment with respect to cognition, including his ability to understand, remember, and follow simple instructions. (Tr. at 259).

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Ms. Newman further opined that Plaintiff had marked limitations with regard to his ability to relate appropriately to co-workers and supervisors and respond appropriately to and tolerate the pressures and expectations of a normal work setting. (Tr. at 259). Ms. Newman made similar findings in a report completed in October of 2007. (Tr. at 275).

In October 2007, Donita Weddle, a social worker described as an "SSI facilitator," opined that Plaintiff was experiencing "significant and debilitating issues with anxiety and depression" following the sudden death of his wife. (Tr, at 268). She described Plaintiff as having difficulty grooming and making eye contact and as having severe social anxiety and intolerance to stress. (Tr. at 268). Ms. Weddle assessed that it was "very unlikely" that Plaintiff would be employable "any time soon" because of difficulties interacting with others, tolerating work-related pressure and stress, as well as problems with attention and concentration. (Tr. at 268).

In September 2008, Eric Stemm, a mental health counselor, described Plaintiff's depression as severe, with marked social withdrawal, motor agitation, and motor retardation. (Tr. at 435). Mr. Stemm assessed a serious cognitive impairment, including short-term memory loss, with severe limitations in Plaintiff's ability to understand, remember, and follow simple instructions. (Tr. at 436). Mr. Stemm found severe impairments with respect to Plaintiff's ability to relate appropriately to

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

co-workers and supervisors, interact appropriately in public contacts, and respond appropriately to and tolerate the pressure and expectations of a normal work setting. (Tr. at 436). He opined that Plaintiff could not tolerate "even the most minimal stress . . . ." (Tr. at 436).

Although the ALJ initially indicated that he was affording the opinions provided by Ms. Newman and Mr, Stemm "great weight," he significantly discounted their assessments and his RFC determination as inconsistent with their conclusions. (Tr. at 41).[3]   However, the ALJ's assessment was not supported by substantial evidence.

The ALJ noted that it was not clear whether Ms. Newman had treated Plaintiff beyond the meetings that led to her preparation of disability evaluation forms. (Tr. at 41).  However, it appears the ALJ made no effort to determine the nature and extent of Plaintiff's treating relationship with Ms. Newman.  The ALJ had an affirmative duty to develop the record to the extent he found the treating relationship ambiguous. *See* 20 C.F.R. § 404.1512(e)(1); S.S.R. 96-5p, 1996 SSR LEXIS 2 (1996); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) ("In Social Security

---

[3] The ALJ first said: "Based on a review of the entire record, the medical opinions offered by Ms. Newman and Mr. Stemn [*sic*] have been accorded great weight." (Tr. at 41).  In the same paragraph, however, the ALJ explained that the fact that the counselors were not "acceptable medical sources" was "not a major factor is [*sic*] according little weight to said opinion [*sic*] in light of the many other inconsistencies of the record." (Tr. at 41).  He then listed several reasons for discounting their opinions (discussed above), such as the questionable treatment relationship and their failure to comment on Plaintiff's noncompliance with treatment.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1   cases the ALJ has a special duty to fully and fairly develop the record and to assure

2   that the claimant's interests are considered.").

3   In addition, throughout his decision, the ALJ placed great emphasis on

4   Plaintiff's noncompliance with mental health treatment and inconsistent treating

5   history. (Tr. at 40-41). In discounting the Newman/Stemm opinions, the ALJ faulted

6   the counselors for failing to comment on Plaintiff's noncompliance with treatment.

7   (Tr. at 41)("To begin, none of the DSHS evaluations comments on the claimant's

8   mental health treatment noncompliance or outright abandonment of treatment.").

9   However, in fact, Mr. Stemm reported that Plaintiff's "short-term memory

10   loss" affected "his ability to remember scheduled appointments." (Tr. at 437). In

11   addition, Dr. Julie Rickard, a treating physician, noted that Plaintiff "lack[ed]

12   insight" and might need help managing his medication. (Tr. at 303).

13   Moreover, the ALJ does not appear to have considered SSR 96-7p. Under

14   that ruling, an ALJ must not draw an adverse inference from a claimant's failure to

15   seek or pursue treatment "without first considering any explanations that the

16   individual may provide, or other information in the case record, that may explain

17   infrequent or irregular medical visits or failure to seek medical treatment." Here,

18   Plaintiff was asked about his treatment history during the administrative hearing, but

19   the ALJ never requested an explanation regarding the treatment gaps. (Tr. at 75-77).

20   In addition, as a general matter, "it is a questionable practice to chastise one with a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996)(quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)).

The ALJ also did not even mention the opinion provided by Donita Weddle, whose assessment was consistent with those provided by Mr. Stemm and Ms. Newman.  It is correct that social workers and mental health counselors do not meet the definition of "acceptable medical sources" under the Regulations and, as such, their opinions are not entitled to special weight. SSR 06-03p.  However, the ALJ was obliged to consider every medical opinion, regardless of its source.  42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1527(d).

The ALJ also does not appear to have considered that the Stemm/Newman/Weddle opinions were consistent with Dr. Genthe's opinion to the extent they noted difficulties with stress.  Dr. Genthe opined that Plaintiff's ability to tolerate stress would "likely depend on the circumstances and settings of his environment." (Tr. 348).  He described Plaintiff's grooming as "unkempt" and noted that his attire was "filthy." (Tr. at 351).  The ALJ does not appear to have accounted for these observations, particularly the assessment of variability in dealing with stress (which was generally consistent with the stress-related limitations noted by Mr. Stemm, Ms. Newman, and Ms. Weddle), in formulating his RFC.  Indeed, to the extent the ALJ discounted the Stemm/Newman/Weddle assessments regarding

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's inability to handle work-related stress, the ALJ's decision in this regard is not supported by any medical opinion evidence of record.  This was a significant error. Stress is "highly individualized" and a person with a mental health impairment "may have difficulty meeting the requirements of even so-called 'low-stress' jobs." SSR 85-15.  As such, the issue of stress must be carefully considered and "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." *Id.*; *see also Perkins v. Astrue*, No. CV 12-0634, 2012 U.S. Dist. LEXIS 144871, at *5 (C.D.Ca. Oct. 5, 2012).  The ALJ's lack of serious analysis concerning Plaintiff's ability to deal with stress undermines the integrity of his RFC analysis.

In sum, this Court finds that the ALJ afforded too much weight to Dr. Genthe's opinion, that his decision to discount the Stemm/Newman assessments is not supported by substantial evidence, that he erred by failing to consider Ms. Weddle's opinion, and that the ALJ did not adequately address Plaintiff's ability to respond to the demands of work-related stress.

B.    *Credibility*

When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict. *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's credibility findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Although lack of supporting medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider when analyzing credibility. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Subjective complaints contradicted by medical records and by daily activities are properly considered. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Thomas v. Barnhart,* 278 F.3d 947, 958-59 (9th Cir. 2002).

In this case, Plaintiff testified as follows: He tries to exercise by walking and riding a bicycle. (Tr. at 70). Back pain is a significant daily issue. (Tr. at 71). He sees a mental health counselor every "couple of weeks." (Tr. at 74-75). He prepares simple meals for himself. (Tr. at 77). His daily activities include watching television, reading short stories, and gardening. (Tr. at 78, 83). Anxiety increases his pain symptoms. (Tr. at 87-88). He struggles with short term memory loss and has difficulty maintaining attention. (Tr. at 92). He occasionally experiences auditory hallucinations. (Tr. at 94-96).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1    The ALJ discounted Plaintiff's testimony, finding it inconsistent with the

2    medical evidence and his activities of daily living, and noting Plaintiff's non-

3    compliance with (and failure to consistently seek) mental health treatment. (Tr. at

4    39-43). The ALJ's credibility assessment was flawed for the following reasons.

5    First, Plaintiff had a consistent earnings record (Tr. at 164), a factor that

6    should have weighed in favor of his credibility. *See Poe v. Astrue*, No. 08-402, 2009

7    U.S. Dist. LEXIS 94036, at * 38-39 (D. Ariz. June 26, 2009); *Light v. SSA*, 119 F.3d

8    789, 792 (9th Cir. 1997).

9    Second, the ALJ placed undue weight upon Plaintiff's ability to perform basic

10   activities of daily living. The Ninth Circuit "has repeatedly asserted that the mere

11   fact that a plaintiff has carried on certain daily activities ... does not in any way

12   detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625,

13   639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.

14   2001)). Moreover, individuals with chronic mental health problems "commonly

15   have their lives structured to minimize stress and reduce their signs and symptoms."

16   *Courneya v. Colvin*, No. CV-12-5044, 2013 U.S. Dist. LEXIS 161332, at *13-14

17   (E.D.W.A. Nov. 12, 2013)(quoting 20 C.F.R. Pt. 404, Subp't P, App. 1 § 12.00(D)).

18   "The Social Security Act does not require that claimants be utterly incapacitated to

19   be eligible for benefits, and many home activities are not easily transferable to what

20   may be the more grueling environment of the workplace, where it might be

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")(citations omitted).

Here, Dr. Genthe described Plaintiff's grooming as "unkempt" and noted that his attire was "filthy" (Tr. at 351), which suggests some difficulty in attending to personal hygiene.  In addition, Dr. Genthe and several other sources (i.e. Mr. Stemm, Ms. Newman, Ms. Weddle) opined that stress would aggravate Plaintiff's impairments and impact his ability to perform basic work activities.    Thus, Plaintiff's ability to perform simple hobbies such as bicycle riding and gardening is not particularly probative of his ability to satisfy the stress demands of competitive work on a consistent basis.

Third, as discussed above, the ALJ discounted Plaintiff's credibility based on his noncompliance with treatment without considering possible explanations for such noncompliance, which was contrary to SSR 96-7p. *See Orn*, 495 F.3d at 638.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Fourth, Plaintiff's complaints of disabling mental health limitations were supported by the Stemm/Newman/Weddle assessments. As discussed above, the ALJ did not address Ms. Weddle's opinion whatsoever and did not give appropriate consideration to the Stemm and Newman assessments.

Accordingly, this Court finds that the ALJ's credibility assessment was not rendered in accordance with applicable law and is not supported by substantial evidence.

C.    *Hypothetical Questions to Vocational Expert*

At step five of the sequential evaluation, the burden is on the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). If a claimant cannot return to his previous job, the Commissioner must identify specific jobs existing in substantial numbers in the national economy that the claimant can perform. See *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Cir.1987). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Here, the ALJ posed hypothetical questions to Mr. McKinney, the vocational expert, and relied on the expert's responses to those questions. When the ALJ presented a hypothetical question involving a claimant with Plaintiff's physical RFC, age, and education, but with a mental health limitation, the vocational expert found a significant impact on the residual work base. In particular, the ALJ asked whether an employer would tolerate a lapse in the ability to concentrate, lasting two hours at a time, and occurring unpredictably approximately every two weeks; the vocational expert opined that this would not be tolerated. (Tr. 101-02). The ALJ then asked whether the employer would tolerate such a lapse in concentration if it occurred at predictable times; the vocational expert believed this would be accommodated. (Tr. at 102-04). None of the ALJ's hypothetical questions included any specific limitation regarding work stress (Tr. at 100, 101-02), although the inability to concentrate could certainly be a byproduct of difficulty dealing with work stress.

The ALJ relied on the vocational expert's testimony in support of his step five determination that Plaintiff could make a successful adjustment to work that exists in significant numbers in the national economy. (Tr. at 45). Because the hypothetical

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

questions did not account for Plaintiff's difficulties with work stress (which difficulties where noted by the consultative examiner and several other sources), the vocational expert's responses to those questions have severely limited evidentiary value and do not constitute substantial evidence in support of the ALJ's step five determination.

## CONCLUSION

This Court has the discretion to remand for additional evidence and findings or remand for calculation of benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). A remand for calculation of benefits is appropriate where the record has been fully developed and further administrative proceedings would serve no useful purpose. *Id.*   The Ninth Circuit has found a remand for calculation of benefits warranted where (1) the ALJ failed to provide legally sufficient reasons for rejecting competent evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if such evidence was credited. *Id.* (citing *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989); *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir.1988)).

In the present case, as outlined above, the ALJ's reasons for discounting Plaintiff's credibility and rejecting the assessments of Ms. Newman and Mr. Stemm

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

were legally insufficient. The ALJ does not appear to have considered the opinion of Ms. Weddle and made no finding with regard to Plaintiff's ability to handle work stress, notwithstanding the fact that Dr. Genthe (the consultative examiner) and the mental health counselors all noted limitations in that regard.   There are no outstanding issues and the record is fully developed. After crediting Plaintiff's testimony, the opinions of the mental health counselors, and the stress-related limitation recognized by the consultative examiner, a finding that Plaintiff is disabled is required. Therefore, the ALJ's decision must be reversed and the matter remanded for calculation of benefits.

**IT IS THEREFORE ORDERED:**

Plaintiff's motion for summary judgment, **ECF No.  17**, is **granted.**

Defendant's motion for summary judgment, **ECF No. 20**, is **denied**.

Plaintiff's counsel may file an application for attorneys' fees.

This case is remanded for calculation of benefits.

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of Plaintiff and **CLOSE** the file.

DATED this 3rd day of January, 2014.

/s/Victor E. Bianchini

VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT